Good morning, Your Honors. May it please the Court, Daniel Butcher for the United States. The United States took this appeal because the district court made three legal errors in granting the motion to suppress the evidence obtained when the agent answered the ringing cell phone. The first legal error, which is the threshold legal error, is finding that the defendant had standing to challenge the search solely by virtue of the defendant's possession of the cell phones, especially when the evidence was undisputed that the defendant disclaimed any ownership interest in the cell phones. Now, that's simply not the law of the circuit. Possession alone is not enough, especially where, as here I've mentioned, there has been a threshold disavowal of any ownership of the cell phone. Now, the law required the defendant to produce evidence establishing two things in order to challenge the search. First, that he had a subjective expectation of privacy. And second, that that expectation was one that society is prepared to accept as reasonable. So I'm going along somewhere, and I've got my friend's cell phone, and they can search it. I don't have anything to say about it. They can just search it, right? You may or you may not, Your Honor. You would have to explain to the Court in the motion to suppress the circumstances under which you are in possession of that cell phone. If the facts were that you stole the cell phone from your friend, no, you would not have any standing to challenge the search. And here we simply don't know what happened. You know, our experience in litigating these cases is that the cell phones frequently are known by the smugglers. We try to trace the ownership, and they turn out usually to be what are called boost phones or prepaid phones, purchased in the name of a fictitious person because there's no identification typically required. But aren't they – I mean, in the schemes you're talking about, they obviously have the possession with the consent of whoever gave them the phones, right? Well, I think typically that is the case. That is the case. But there are many nefarious ways under which – Your whole argument is he had these phones because some drug narcotics trafficker gave them to him to use in order to call to either deliver or pick up drugs, right? So that's permissive use. Well, first of all, the law of the circuit is very clear under a case called Zermeno. It's 66 Fed 3rd at 1062. That government theories or allegations in government pleadings are no substitute for a defendant's obligation to produce evidence regarding standing. These are arguments that have been – similar arguments have been raised and rejected. And what the courts simply have said is the defendant has to come forward with evidence in the first instance. And that was exactly, I would anticipate, the argument that the defendant would have made in Thomas, where the evidence of permissive use or the circumstantial evidence from which one could infer permissive use was much stronger than it is in this case. All right. But do you have – can't you – you don't have to have direct evidence of that. You could have circumstantial evidence. Well, Thomas seems to suggest not that the defendant has to come forward with some type of evidence claiming a subjective expectation of privacy and explaining circumstances such that the court can find that society is prepared to accept that as reasonable. What if we don't read Thomas that way? Well, if you don't read Thomas that way, then I think where we're left is that the defendant still has produced nothing as far as any evidence establishing an expectation of privacy. There's simply nothing in the record from which the court can find an expectation of privacy. And the court can't use or assume any legal theories on the part of the government in reaching that conclusion. And there's a case called Singleton that I think – Well, we have the evidence, I suppose, about what happened after he answered the cell phone. It seems to me those facts could not possibly have followed if the possession of the cell phone was not permissive. Well, here's the problem, Your Honor. For all we know, the – and we don't know – for all we know, this car could have been stolen by the defendant or taken for a joyride or taken for a test drive. He may have answered an ad in Craigslist to – for a car for sale, taken it for a test drive and was in the area, got pulled over by the board collision. Actually, he didn't get pulled over. He stopped on his own, but that's another issue. And the car wasn't his and the phones weren't his. And lo and behold, his bad luck, he was test driving the car or stole the car or was joyriding in a car that belonged to an alien smuggler. We simply don't know that that's what happened here. And that's the problem. So if the – if he didn't have permission to use the phones, would his consent for them to be searched be valid? Well, it's an alternate – it's an alternate basis to uphold the search. So there clearly was a valid consent here. So assuming he had standing, then the next question is, okay, he's got standing to challenge the search. Now, did he validly consent? Okay. And then I think the most critical element of your argument is what was the scope of that consent? Correct. Did it extend to actually answering the phone? That's right. Yeah. So that – yeah, once we get to the consent argument, that's here. And our argument is that the unlimited scope to search should be coextensive with what the Fourth Amendment considers to be a search. And if the argument here by the defendant is that answering a phone, in fact, was a search, then it should be covered by the consent. And I think that Gallo and Ordonez, the cases that are cited thoroughly in your brief, give the agent an inherent authority when conducting a valid search to answer an incoming call that the agent has reason to believe relate to the criminal activity in progress. Well, I suppose the question is whether the scope of somebody's voluntary consent has to follow the same pattern that you follow when magistrate's issuing a warrant for a search. Right. Well, when the magistrate issues a warrant for a search, we're – the officers are pretty narrowly constrained. And what they can search for by the attachment B of the warrant. Here are the consent search, which is unlimited. Are you saying when the magistrate authorizes a search of a cell phone that you're narrowly constrained and couldn't open it and listen to an incoming call? Well, I think you would have to undergo the analysis in Gallo and Ordonez. And I think those cases say that, in fact, even if the attachment B does not expressly authorize the officer to answer the calls, Gallo and Ordonez would say, yes, that there's still the inherent authority to do so. So they're not so narrowly constrained, then? Well, not with respect to the – But your answer was that when Judge Canby asked if there's a difference between the consent and the magistrate's issuance of a warrant, you said, well, you're narrowly constrained if it's an issuance of a warrant. In other words, what I think – I think it's an easier argument to make when we're dealing with an unlimited consent as opposed to the situations in Gallo and Ordonez when there was some expressed limitations contained by virtue of the attachment B. So I think this is an even easier argument to make here that the consent did include the authority to answer the phone calls. Now, I think it's also important to know for background that the defendant could have come forward with a declaration here in this case or testified without fear that anything the defendant said in the declaration or testimony would be used against him at trial. There's a case from the United States Supreme Court from 1968 called Simmons that expressly holds that we're not going to put defendants to a dilemma of – That you can use it for impeachment purposes and cross-examination. That's true under Veltron. That's correct. Right. So – But that's – I mean, that's what it says. It's fair. But, you know, in the first – we're assuming that the defendant would be honest in the declaration, and if it turns out by virtue of something the defendant said at trial that the declaration was not honest, it's only fair that that should be fair game for impeachment. I don't know. I find something very troubling about consenting to search for stored data versus actually answering the phone and intercepting a communication. I just see those two things as very different things and things that are part of different levels of expectations of privacy. Well, I would respond by saying that the types of things that an officer can discover by going through the contents of a phone typically implicate much greater expectations and greater matters of privacy than do answering incoming calls. The incoming calls under the law of at least the Sixth Circuit, and I think it's the Perazzi case, it holds that there's no reasonable expectation of privacy in a telephone call to which the defendant is not a party. So I think that if you're looking at the competing privacy interests here, the privacy interest that was already essentially waived or forfeited by the defendant in consenting to the search of the cell phones is much greater. But he knows what's in the phone, right? So he knows what he's consenting to. I think not. Perhaps in a typical case where perhaps the – would apply more to everybody. It wouldn't just be limited to narcotics traffickers. Sure. So in a typical case, you know what you have stored on your phone and you know what you've deleted and double deleted or whatever you have to do these days to get things off. But you don't know who's on the other end of that telephone call. I think that's – I can't argue with that. I think that's absolutely right. However, by the same token, if the co-conspirator would have made a wrong number call and happened to get a police officer and that call was actually intended for the defendant, I think the police officer could certainly answer that phone. The police officer impersonated the defendant. He asked three times, and that also I find really troubling. He sort of took his identity and impersonated the defendant. Well, I think you're right that the police officer certainly did not inform the caller that a police officer had answered the call. The police officer simply said hello or something to that effect, and the first words out of the co-conspirator's mouth were, how many did you pick up? I just don't think it's reasonable in a case like this, and perhaps this gets to the third argument, the exigent circumstances, to essentially require the officer to either get a warrant, which is completely out of the question under these circumstances, or do nothing. You can't get a warrant to answer a phone call that you're not expecting to get. Pardon me? You can't get a warrant to answer a phone call that you're not expecting to get. Correct. The question is whether the police officer should be allowed to answer the phone call. That's right. And to go one step further, kind of become involved in the transaction. Well, that's – there's plenty of authority that holds that the police officer can impersonate someone else in conducting essentially undercover investigations. I mean, that's fair. That's established. That happens all the time. So I don't think the – As far as the scope of the consent, you could ask if you consent to the search of the phone,  You could say, and can we answer the phone? So you could get consent. Sure. If – this is not doomsday. If we were to decide that we couldn't do this without consent. Well, I think the Court does need to deal with the issue, number one, did the officer need to do that, or was the original consent broad enough? And two, what if the defendant said, no, you may not answer the phone? Then you wouldn't have consent. I mean, your whole case is based on consent.  All right. So this issue, at least, is based on consent. And you say, well, what if he said no? What if he'd said no here? Well, if he had said no here, then obviously we would have consent. We wouldn't be on that issue. That would – That's what we – same thing would happen if he said, no, you can't answer my – any future calls. Sure. But – Okay. So it's not so terrible. Well, it's not so terrible so long as the Court recognizes the exigent circumstances of the doctrine exists. And this is a situation where the officer was investigating criminal activity afoot. He had very good reason to believe that this defendant was engaged in criminal activity. And the only way to – Could he have seized the phones? Well, I haven't thought of the answer to that. But clearly, if there had been an arrest, I think that would have been something that the officer could have seized. Without the arrest, could he have seized the phones? Well, I think once the defendant had disclaimed any ownership in them, it would depend on the circumstances of the defendant's possession. I was wondering, because answering the phones is more akin to seizing them, in my mind, than searching them. So I'm just – I just – you know, what's your best answer on that? My best answer is, yes, if the officer had arrested the defendant, that would have been a permissible seizure of evidence pursuant to an arrest. And, yes, the officer had probable cause at that point to arrest the defendant. Now, I don't think the officer would have prudently relied on that probable cause to effect an arrest because there was still additional evidence that would have needed to be obtained to get to the bottom of what was going on and to prepare the case to the point where the United States could prove it at trial beyond a reasonable doubt. Well, I mean, the police officer, if he sees illegal activity, the first thing on his mind isn't whether or not he has something that is neatly packaged up to turn over to the prosecutor. Correct. Would the exigent circumstances doctrine here have allowed the officer to seize the phones? Yes, I believe so. If the officer had probable cause to believe that the phones contained evidence of the criminal activity under investigation, that's what the exigent circumstances doctrine is all about, to allow the seizure when there is no time to obtain a warrant. So that theory would depend on there being probable cause. And there was probable cause? Sure. Oh, yes. I don't think there's any fair argument to be communicated under these circumstances that there was no fair probability that criminal activity was afoot here. And, you know, I see I'm over my time, and that's all been set out clearly in my brief. And, you know, unlike a typical situation where you have to draw the line of where probable cause existed at the time the vehicle stop was made or at the time the Terry stop was initiated, here because what's being challenged started with the answering of the phone calls, there's a lot of information that the officer had available to him between the time that the Terry stop essentially was effectuated and the phone call answered. And that was all the conversation that the officer had with the defendant about the defendant not knowing whose vehicle it was, the phone belonging to a friend, the defendant giving inconsistent information about his direction of travel, all kinds of inconsistent answers. And then the Border Patrol agent recognizing not only there were two cell phones, which is indicative of the criminal activity, but the two cell phones that did not belong to the defendant, one of which the Border Patrol agent recognized as a cell phone that is commonly used by smugglers in that area because it works so well on both sides of the border in a prepaid phone. So if there was probable cause, why didn't they just arrest Lopez then and there? Then you could have answered the police officer could have answered the phones, seized the phones. Well, he was placed under arrest right after the calls. And I think, first of all, the law is clear that the police officer does not have to effectuate the arrest as soon as there's probable cause. Perhaps if the officer had done it that way, it might be a different legal analysis, but I'm sure what the officer had in his mind was that there's still criminal activity afoot. And before I determine whether this is drug smuggling, alien smuggling, whatever, I need to conduct further investigations. Do you have to have for probable cause, does it have to be a fair probability of a specific crime? Like, would he have to know that there was a fair probability of alien smuggling as opposed to narcotics trafficking? Interesting question, and I found nothing in the case law that supports the notion that there has to be probable cause to believe a specific crime has been committed. The cases seem to say that there's fair probability that there is evidence of some crime or criminal activity was committed or was being engaged in at the time. And I think what the law requires in that regard is that once the arrest has been made based on probable cause, the officer still has some time to conduct some investigation and usually 48 hours in which to get a complaint on file where the officer has to actually identify the specific crime with which he or she is charging the defendant. All right. Thank you. Thank you. Interesting case. Good morning, Your Honors. Devin Burstein, Federal Defenders, on behalf of Mr. Lopez. Your Honors, the district court heard all the evidence that the government just recited to you, and it carefully and thoroughly considered it, and the district court got it right. There are two orders here, and they should each be considered. In turn, first, the order granting the suppression motion, the district court got that right. And then the district court certainly did not abuse its discretion in denying the government's motion. Well, let's start with the one that was discussed at oral argument. Both were discussed, because as soon as the government raised exigent circumstances, that's the motion for reconsideration. The district court found, as to that, the district that the government hadn't properly raised initially, and the district court said, I'm not going to reconsider that. You haven't met your burden for a motion for reconsideration. That was a proper exercise of discretion. So the exigent circumstances should, the merits of it should never come up. Let's start. They didn't raise exigent circumstances. The government didn't raise exigent circumstances in the first, in defending the motion to suppress. Exactly. That was what the district court specifically found. Nowhere in the government's papers does it use the word exigent, exigency, and because probable cause is the very first prong. The fact that they never argued probable cause until the appellate department came in for the motion for reconsideration shows they never raised exigent circumstances in the original motion. So the district court declined to reconsider it. That should be the end of the story. Going on to the initial motion, which I think, Judge Reinhart, which is where you'd like me to direct my attention, that was the issues over standing and consent. Here, turning to those, the district court also properly ruled that Mr. Lopez had standing to contest the search of the cell phone. That was based on the motion to suppress the burdens on the movement, isn't it? Yes. To demonstrate standing, right. Yes. And what did you do to demonstrate standing? Well, the evidence before the district court showed that the defendant was in sole possession and control of the cell phones. They were within his arm's reach, and he said they were his friends. Now, if you said to me, counsel, I like your tie. Whose tie is that? I said my friend's. You would say, okay, that's a, the inference is that you have your friend's tie. It's a misuse of your friend, and you're in possession of it. Now, if you wanted to just take it from me, I think I would say I had a reasonable expectation of privacy, essentially, in my tie. And that's the exact circumstance here. The district court made a factual finding. That factual finding was certainly not clearly erroneous. Indeed, it was correct that he was in sole possession and control of the phones, and that's what Agent Soto believed. Hence, and, I mean, if we can all be honest, that's the exact government theory.  And, in fact, we know that he was using the phones, because they rang just afterwards to suggest that somebody with sole possession and control of a cell phone who has his friend's cell phone and is using the cell phone doesn't have a reasonable expectation of privacy, an expectation that society generally would recognize is simply not, we would say, a reasonable argument. And the district court certainly didn't find it to be a reasonable argument. You know, Portillo specifically gives us a broad definition. A reasonable expectation may be shown either by reference to concepts of real property or personal property law, or to understandings that are recognized and permitted by society. Therefore, a defendant who lacks an ownership interest may still have standing to challenge a search upon a showing of joint control or common authority over the property search. That's a quote from Thomas. Here, it is no question that at a minimum he had joint control and common authority over the cell phones. We don't think this is even a close question on the standing. We believe that the district court got it right, which would bring us, if Your Honors don't have further questions about standing, to the issue of consent. The threshold issue, and this has to be, I can't stress it enough, this court has been 100 percent clear time and time again that a district court's findings, this is a quote, a district court's findings as to the scope of consent is reviewed for clear error. That's here under the clear error standard. The district court's finding was that the scope of consent didn't extend to answering the cell phones, and specifically, she said, under the objective reasonableness standard, she was not, the district court was not persuaded that a reasonable person would believe that consent to look at or search a cell phone would include consent to answer the incoming calls. Now, time and again, the government comes up here when they are the appellee and says, this court should respect the district court's findings as to the scope of consent. And just simply because the government happens to be on the other side of the table, they don't get to change that. The scope of consent is reviewed for clear error. Here, there was no clear error. I suppose the one difference that they might stress is that the district court is making a ruling that is, it doesn't have to do with how this particular consent was phrased or anything else. It's a very general ruling saying if you consent to the search of a phone, you're not consenting to answering it. I think that that is the argument the government is trying to get you to go for. And I don't think that you need to go there, and I don't think Fourth Amendment jurisprudence is in line with that kind of necessarily grand rule covering all things. I think the government, I think you look at the specific facts of the case before you, Judge Candy, and I think you look at the specific interaction, being asked to look at or search a phone. Well, the answer is, but you are asking for a rule that if they just say, can I search the phone, that's not enough. That, I mean, a broad rule like that, it would be, yes, I mean, Federal defenders would be very happy with that. Well, how would there be a narrower rule based on this case? Well, that was the question I asked him, can I search the phone? Well, his declaration says, he asked me if he could look through the phones. So I said yes. There were two things, I think. Can I look in the phone and can I search the phone? But that was the – Judge Wardlaw is accurately correct, is accurately quoting the declaration. He didn't say, can I search the phone? He said, can I – he's – okay. Agent Soto's testimony is he says, I asked it both ways. Our client's declaration is, can I look through the phone. Now, our position is, in the context of the facts of this case – Did the district court say which she believes? She said, search or look through a phone. Okay. Well, then you want us to take the district court's findings at, you know, not overrule them. Right. And she said that he said, can I look or search the phone, to both ways. And you say, no, we should accept what your client says. Your Honor, Judge Reinhart, I don't believe it makes a difference. I think that either way – All right. But, you know, so you think that the ruling is that even if he said, can I search the phone, that that's not enough. Right. Under the facts here, I would say that that is not – that the scope of consent wouldn't be to enter in the phone. And, Your Honor, if – All right. That's fine. I'm agreeing or disagreeing with you. I'm trying to find out, when you say to us you can make a very narrow ruling, it depends on the facts. I say here are the facts according to the district court are that they said, can I search the phone. Right. And when I said to you, so that your ruling would be that if the question is, can I search the phone, and you consent to search the phone, that that is not enough. And I am saying, yes, Your Honor, that is not enough. Okay. Well, that's the broad ruling. I thought you said you don't have to say that. Well, I mean, this Court never has to reach the broadest possible ruling. But what I think that not – the consent to search alone is not enough. If you're at a – if a police officer asks you, can I search your phone, can I look in your phone, and I say, you know, here's my phone, officer, sure, go ahead, and then my doctor calls me with, you know, some personal medical information, I would never in a million years imagine that by saying, yes, you can look in my phone, you can search my phone. All right. So you're saying it is not – the ruling is that you're asking for us for is not some kind of a narrow ruling that if my doctor calls after I've consented, that's not what I thought about. You're – the ruling you're asking for – I don't know why you're so shy about it. The ruling you're asking for is that if you give consent to the search of the phone, that does not include consent to answering the phone. Yes, Your Honor. That is absolutely – In fact, the district court made such a broad ruling, and she noted that two other world, that consent to search does not equal consent to answer. Right. We would agree with that wholeheartedly. And I mean, if – I know you'd agree, but you said to us we should make a narrow ruling based on the fact. I apologize. Maybe I apologize. I should have gone bigger from the start. Well, I don't know. I don't mind going smaller or bigger or whatever if you tell me what a narrow ruling would mean in this case. What are the facts that suggest to you there is a narrow ruling we can make? Your Honor, I was just trying to get to the point that this Court can affirm simply by saying the district court didn't abuse its discretion – didn't declare the error in making its factual finding. And that's what got us into this mess. The government's – the reason for asking for de novo review is that we're really getting into an error – a ruling of law here. And that's the broad ruling and so on. We don't have to accept that. Most of our law – I mean, we've got cases saying that the scope of a consensum error, clear error. Right. No matter how it's reached. And that's what I was – that's all I was trying to do. And I apologize if I threw a – spoke in a wheel here by doing that. You got us confused. At least me. I did. I'm a proud judge of war law, you know. I apologize for doing that. You know, I think that what matters here most of all is that the district court was correct in its ruling that – that the scope of – Or did not commit clear error. Or did not correct – commit clear error in finding that the scope of consent didn't extend to answering the cell phone. I have a question on the government in its reply brief says that, well, you know, in our initial opposition to the motion to suppress, we talked about the circumstances that permit us to answer – or why we should be permitted to answer the phone, and that we mentioned, quote, spoliation of the evidence, unquote, quote, danger to the safety of the living contraband, unquote, and potential danger to the community. And they cite ER 147 that I don't have with me. Yeah. But why wouldn't – they don't have to use the words exigent circumstances, do they, if they're talking about, well, if we had to answer because there were imminent dangers that – If they want a ruling on exigent circumstances, they have to raise it. And this is a bait-and-switch. They never – it's not when the district court rules on suppression, they don't go – they don't say, object and say, oh, you didn't rule on exigent circumstances. That quote, I'll pull it for you. But it's in the government's responding to – to – yeah. It's the government's responding to the Davis case, which is one of the two cases that Judge Wardlaw just referenced, where we cited where they – there was a distinction. The government just happens to try and distinguish Davis. It's making – indeed, the heading of that argument has nothing to do with is defendant granted consent to examine the phone. No fair reading of it. It's a revisionist history to suggest – No, I'll dig it out and read it. To suggest that that was a raising of exigent circumstances. They are merely saying that paragraph begins with talking about defendant also cites to Kim in Davis, and then that paragraph says, to the extent the defendant attempts to distinguish the present case because it doesn't involve drug-related crimes, and then they go into the fact that – the dangers. But it has nothing to do with an exigent circumstance argument. And the district court was well within her discretion in finding that. That had not been properly raised. But the district court did make an alternative ruling on the merits with respect to raising circumstances and the denial of the motion for reconsideration. She did. She ruled – she went further, and that's where you guys got into the probable cause discussion with the government. And we would – we would submit, A, that the district court was correct, that she didn't have to reconsider it, and, B, she was right on the merits. There was no probable cause at the time. And the probable cause question, you know, is really not a general probable cause question, but whether they had probable cause to believe the incoming call was related to alien smuggling. That would be the probable cause question. And it – Let me just – one thing that seems odd to me is that – I mean, the exigent circumstances doctrine has to do with getting rid of the phones or the phones – what they contain being deleted or losing the phones or having the defendant take off of the phones, that it doesn't pertain logically to answering the phone because they still have the phone. Right. And a number of courts have said that. I don't understand that. Yeah, I don't understand that argument. I agree with you. I don't – I think that the district court was right both on the exigency prong and also on the probable cause determination prong. I see that I've just gotten a little – Thank you. Thank you. Just let me say one thing to you with which my colleagues probably will disagree. Okay. And I'm not suggesting it's either Justice Rehnquist or Chief Justice Roberts said to the lawyer who called him Justice instead of Mr. Chief Justice. I think that's going a little far, but I wouldn't recommend to you that when you speak before most panels, you speak about you guys. Okay. You don't recall saying what you guys think. I – if I – you know, I apologize. You don't have to apologize at all. I said you've got a very relaxed, easy panel. But if you had another panel, I wouldn't recommend saying you guys to them. I will take that. It's something I try to convince my law courts of regularly when they tell me you guys. I've heard Judge O'Scanlan say he does not like the words you guys being used. Well, I said some – I will not use the words you guys, I assure you. Particularly not if you appear before Judge O'Scanlan. Okay. I have, and I will be careful again not to do that. Thank you. Okay. I appreciate the indulgence. I know it's been a long morning. I only have a couple points. First, on the issue as to whether there was some waiver or forfeiture on exigent circumstances, in addition to the point that Judge Canby made, I also would like to call the Court's attention to pages 158 and 159 of the excerpts of record. That's part of the defendant's briefing before the Court's initial ruling, in which the defendant spent two pages replying to, and I quote, the government's theory on exigent circumstances. So how we can argue now that that wasn't fairly raised when his colleague responded in essentially what was a reply brief to it. But be that as it may, I think Judge Wardlaw is right, perhaps suggesting the Scott decision, that when the district court went ahead on reconsideration, which the district court agreed to here after we essentially went to the district court and said, look, we would like to get a ruling on exigent circumstances. You already didn't rule on it. She agreed with that and said, you can go ahead and file it and submit anything you want, and I'll consider it anew. And even though she made the initial ruling regarding an abuse of discretion and not meeting the standards for reconsideration, she did go ahead and resolve it on the merits. So there's something very concrete for this court to review. Can you explain to me real quick, and then I'm going to stop asking questions, how answering the phone falls within traditional notions of what constitute exigent circumstances? Okay. Fair question. There are cases, not in the circuit, that hold that an officer, when investigating drug trafficking in process, picked up a cell phone, a ringing cell phone, obtained information about and spoke to a co-conspirator, which led to a takedown. The case says that that is within the scope of exigent circumstances. The evidence that is seized is not the cell phone itself, but the information conveyed in the phone call. And that's the evidence, the information that was coming in the phone call, that exigent circumstances required the agent to take. Fortunately, everything turned out well here, but I suspect we'd have a different case, and the court might have a different reaction to it, if after taking the phone call, the agent got in the car and drove, and found aliens who were stranded and perhaps dehydrated under some type of duress. The agent just doesn't know what the agent is up against until the agent follows through and completes his investigation. We could have had terrorists trying to enter the country. We just don't know, and it's not fair to use after the fact, saying, well, this wasn't a big deal, to somehow inform that there weren't exigent circumstances to start with. Well, that's a basic Fourth Amendment argument you're making. You know, it's okay because it really was, we saved, by an illegal search, we saved the victim from crime. My point is, I think we shouldn't consider one way or the other, how it turned out. That's all I'm saying. I think Your Honor would agree with that. I'm more interested in the question of, whether when a court goes ahead after saying, it doesn't have to decide something, it then goes ahead and decides it, how we treat that decision. I think I've seen some cases that suggest, or say what you said, that even though the first finding was, we shouldn't consider it, and then the court goes ahead and considers it, that that's something we could or should reach. What was the case you said? Such a case came out approximately two weeks ago. It was called Scott, S-C-O-T-T. I did submit a 28-J letter on that recent decision. So that's, I think, a good place to start. That's what the court seemed to say. My final point on consent, and we discussed the issue, is there a narrow basis or a narrower basis than the general legal proposition to decide this case? And one thing I would offer is that, I think it is relevant that the consent was packaged with an initial threshold disavowal of ownership. So in other words, these aren't my phones, go ahead and search them. I think that gives, under the Gimeno standard, a reasonable observer of that conversation, and trying to figure out what was within it. That was the last case, wasn't it, that said, it's not mine, so go ahead, I can't do whatever you want. There was a threshold disavowal, that may have been, but the defendant here both disavowed ownership of either of the phones, and then followed that up with a consent. So that's, I think, a, you know, it's a better argument that a, under the Gimeno standard, a reasonable observer observing that interaction would interpret that to mean that the defendant simply has given up any privacy interest at all in the phone and doesn't care what the agent does with it. That's not my point. It doesn't have any choice. Pardon me? Or it doesn't have any choice. Well, I don't think there's any claim here that there was anything involuntary or coerced about the consent. But I appreciate the Court's time. Thank you very much. Thank you. The case just argued will be submitted. You guys did a very good job.
judges: Canby, Reinhardt, Wardlaw